UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**TONI BONE**                                                                                                          **PLAINTIFF**

v.                                     **CASE NO. 4:09cv00685 BSM**

**G4S YOUTH SERVICES, LLC; MARY
STEELE; VALENCIA PUMPHREY;
ARKANSAS DEPARTMENT OF HUMAN
SERVICES; and TODD SPEIGHT**                                                      **DEFENDANTS**

## ORDER

Defendant Arkansas Department of Human Services ("DHS") moves to dismiss the discrimination and retaliation claims brought against it by plaintiff Toni Bone ("Bone"). [Doc. No. 8]. Bone objects to dismissal. [Doc. No. 14]. The motion is denied.

## I. ALLEGATIONS

As a preliminary matter, it is determined that Bone seeks redress against DHS for discrimination and retaliation. This determination is made because DHS asserts that Bone claims only discrimination, while Bone maintains that she seeks redress for discrimination and retaliation. The complaint sufficiently alleges claims of discrimination and retaliation.

For purposes of this order, all of the facts alleged by Bone are taken as true. Bone filed this Title VII case against DHS alleging discrimination and retaliation. In March of 2007, Bone was hired as the Director of Education by G4S Youth Services, LLC ("G4S"). G4S contracts with DHS to operate the Arkansas Juvenile Assessment and Treatment Center ("Juvenile Center").

Bone had surgery on her shoulder in March of 2008. She gave defendants notice of

the surgery and took two weeks off from work. Upon arriving back to work, Bone was informed that her job was being split into two separate jobs, and that she would oversee special education. Bone was then told that she would have to start teaching classes. Concerned for her shoulder, Bone told defendants her doctor had not released her for that particular duty. Bone, however, was directed to begin teaching regardless of her medical condition. On her first day of teaching, she almost injured her shoulder again during a fight. She believes that placing her in a classroom was an effort to ger her to quit.

In the winter of 2008, a DHS employee named Mary Steele ("Steele") directed Bone to change the grades of several students so that those children could pass a class. On another occasion, Steele directed Bone to appoint a surrogate parent for a student because Steele did not want to deal with the student's parent. When Bone refused because she thought it was illegal, Todd Speight ( "Speight"), G4S's director, instructed Bone to follow DHS's orders regardless of the legality of those orders.

Bone was also unable to buy textbooks or supplies for poor students. Although G4S and DHS received federal money tagged specifically for these students (Title 1 funds), they refused to give her money to buy textbooks and supplies. She complained about this to Speight; Kerry Knott; Valencia Pumphrey ("Pumphrey"), an employee of DHS; Steele; and the director of DHS, and informed them of their legal obligations under Title I. Eventually Bone received some donated textbooks, and bought the students' supplies with her own money.

Bone attended a job fair to assist the Arkansas Department of Education with

2

recruitment. She was later told by Speight and Pumphrey that she was not to attend any more job fairs. Pumphrey told Bone that she did not want an old white lady in a suit recruiting.

Bone complained to G4S's human resources department that she was being discriminated against on the basis of her race, age, and gender, and in May of 2008 she was terminated. Both DHS and G4S employees were present and participated at her termination meeting. She was fired despite the fact that in December of 2007, she received the second highest evaluation given by Speight. Bone was terminated even though younger black employees engaged in misconduct or performed their jobs poorly. Those employees, and others who were not terminated, had never complained of discrimination and had never complained of violations of the law or misuse of public funds. Further, other male employees and those who had never used FMLA leave were not fired, although they poorly performed their jobs or engaged in misconduct.

## II. MOTION TO DISMISS STANDARD

"Dismissal is proper where the plaintiff's complaint fails to state a claim upon which relief can be granted." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing Fed. R. Civ. P. 12(b)(6)). Accepting as true all of the factual allegations contained in the complaint, the court must review the complaint to determine whether its allegations show that the pleader is entitled to relief. *Id*. "The plaintiffs need not prove specific facts in support of their allegations, but they must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Id*. (internal citations omitted).

III.  DISCUSSION

DHS's motion to dismiss is denied.  DHS argues that it did not employ Bone.  Rather, DHS contracted G4S to operate the Juvenile Center, and G4S employed Bone.  Therefore, Bone may not bring a Title VII claim against it because Title VII prohibits only unlawful employment practices committed by an "employer."

In its motion, DHS relies heavily on *Graves v. Women's Prof'l Rodeo Ass'n, Inc.*, 907 F.2d 71, 73 (8th Cir. 2002).  In *Graves*, the Eighth Circuit held that courts should look to the dictionary definition of "employer" when determining whether the defendant was the plaintiff's employer.  *Id.* at 73.  After examining the definition of "employer," the court stated

> [C]entral to the meaning of these words is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services - that person being the employee.  Compensation by the putative employer to the putative employee in exchange for his services is not a sufficient condition, but is an essential condition to the existence of an employer-employee relationship.

*Id*.  Referencing this language, DHS maintains that it cannot be Bone's employer because no employer-employee relationship existed.  It points out that in the complaint, Bone admits that she was employed by G4S.  Further, DHS asserts that no one at DHS had supervisory authority over Bone.  Because it did not employ Bone, DHS requests that it be dismissed from this action.

Bone responds that DHS was her employer for purposes of Title VII under the indirect theory of liability.  The indirect theory of liability creates liability when an employer

exercises control of an employee's employment opportunities, even though it is not that person's direct employer. This theory was adopted by the D.C. Circuit Court of Appeals in 1973. *See Sibley Mem'l Hosp. v. Wilson*, 488 F.2d 1338 (D.C. Cir. 1973). Bone maintains that although the Eighth Circuit has not specifically addressed the indirect theory of liability, it has cited to *Sibley* favorably in its interpretation of "employer," stating

> We start with the proposition that "Title VII of the Civil Rights Act of 1964 is to be accorded a liberal construction in order to carry out the purposes of Congress to eliminate the inconvenience, unfairness and humiliation of racial discrimination." Such liberal construction is also to be given to the definition of "employer." *Sibley Memorial Hospital v. Wilson*, 160 U.S.App.D.C. 14, 488 F.2d 1338 (1973).

*Baker v. Stuart Broad. Co.*, 560 F.2d 389, 391 (8th Cir. 1977) (additional citations omitted). Bone also points out a number of district court cases in the Eighth Circuit that she maintains follow *Sibley*. *See Trimble v. BNSF Ry. Co.*, 636 F.Supp.2d 916 (D. Neb. 2009); *Daud v. Gold'n Plump Poultry, Inc.*, 2007 WL 1621386 (D. Minn. 2007); *Dunn v. St. Louis County*, 1989 WL 35541 (E.D. Mo. 1989). She asserts that DHS had a relationship with her and exercised control over her employment and employment opportunities. She maintains that DHS's agents oversaw G4S's work at the Juvenile Center and gave frequent instruction to Bone on how to do her job. Indeed, Bone asserts that the instruction given by employees of DHS was at times illegal, and led to her termination.

Bone's contention that she was often given orders by DHS and that in part her termination was caused by her failure to comply with direct orders from DHS is sufficient to overcome DHS's motion to dismiss. DHS's actions indicate that it maintained control

over Bone and that DHS played a role in Bone's termination. For these reasons, Bone has successfully stated a claim against DHS.

## IV. CONCLUSION

For the reasons set forth above, DHS's motion to dismiss [Doc. No. 8] is denied.

IT IS SO ORDERED this 14th day of May, 2010.

_____
UNITED STATES DISTRICT JUDGE